[Civ. No. 14727. Third Dist. Feb. 14, 1975.]

MINNIE PEARL CRAIG, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
SHEPARD FOUNTAINE, Real Party in Interest.

**COUNSEL**

Evelle J. Younger, Attorney General, Charles P. Just and Janice Hayes, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Larry L. Lawson for Real Party in Interest.

## OPINION

**FRIEDMAN, J.**—This proceeding is the outgrowth of a paternity action pending in the Sacramento Superior Court. Minnie Pearl Craig, the child's mother, is a resident of Oklahoma. Represented by the district attorney, she seeks child- support from Dr. Shepard Fountaine, the alleged father. Dr. Fountaine denied paternity and moved for an order requiring blood tests.[1] Mrs. Craig resisted the motion on the ground that Dr. Fountaine's paternity had been adjudicated by a 1970 Oklahoma divorce decree which became res judicata of the fact of paternity and which is entitled to full faith and credit in California. The trial court ordered the blood test. Mrs. Craig now seeks a writ of prohibition to prevent enforcement of the order and to prevent further orders made in aid of Dr. Fountaine's attempt to litigate the question of paternity. Dr. Fountaine appears here as real party in interest.

Appended to the petition for prohibition is a copy of a divorce decree rendered by the District Court of Choctaw County, Oklahoma, in the case of Fountaine v. Fountaine, No. D-828, on February 6, 1970. The decree recites, one, that the court has full jurisdiction over the parties; two, that the parties are husband and wife; three, that "To their marriage has been born one child, Bryan Keith Fountaine;" four, that Minnie Pearl Fountaine is entitled to custody of the child; five, that Minnie Pearl Fountaine is entitled to a decree of divorce on the ground of incompatibility; six, that Shepard Fountaine, Jr., should pay $125 per month for the support of Bryan Keith Fountaine.

Dr. Fountaine appealed the judgment to the Oklahoma Court of Appeals, urging that the trial court lacked personal jurisdiction since he was a resident of Ohio. In a written opinion filed April 3, 1973, the Court of Appeals rejected his contention, holding that he had voluntarily submitted to jurisdiction in Oklahoma by having his Ohio lawyer answer and appear at the trial "without once raising a challenge to the court's jurisdiction over his person." The Oklahoma Supreme Court denied certiorari on June 11, 1973.

[1] In seeking to take evidence on the paternity issue, Dr. Fountaine's counsel relied on then Code of Civil Procedure section 1696 (now § 1695), which provides: "If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both· of the parties are present at the hearing or the proof required in the case indicates that the presence of eithcr or both of .the parties is not necessary, the court may adjudicate the paternity issue. Otherwise, the court may adjourn the hearing until the paternity issue has been adjudicated."

According to the opinion of the Oklahoma Court of Appeals, the parties were living in Wichita, Kansas, where Dr. Fountaine was an intern and petitioner a student nurse. They engaged in sexual relations and commenced living together about September 1964. Petitioner became pregnant and refused Dr. Fountaine's suggestion of an abortion, at which point, in June 1965, he moved out and went to Cleveland, Ohio. Petitioner went to her own home in Hugo, Oklahoma. She attempted unsuccessfully to initiate a bastardy proceeding, then a divorce. The child was born and, in January 1966, she instituted the divorce action which culminated in the Oklahoma decree of 1970. Although the parties had not undergone a ceremonial marriage, the Oklahoma district judge found a common law marriage under Oklahoma law.

The opinion of the Oklahoma Court of Appeals states that Dr. Fountaine was served with process under the Oklahoma "long-arm statute," which could not constitutionally serve as the basis for subjecting him to the compulsory jurisdiction of the Oklahoma courts. Nevertheless, the appellate court sustained the finding of the trial court that defendant, through the actions of his attorney, had waived his jurisdictional objection by making a general appearance and contesting the claim of common law marriage. The attorney was a member of the Ohio bar practicing in Cleveland. Dr. Fountaine employed him to represent him in the divorce action. On the day of the divorce trial, the Ohio attorney appeared in the Oklahoma court. He did not employ local counsel.[2] According to the appellate opinion, the attorney told the trial judge he was there to represent the defendant and was told to "proceed." Not until an unsuccessful motion for a new trial did an Oklahoma attorney appear for the doctor. On the appeal, the court held that the Ohio attorney's failure to challenge Oklahoma's in personam jurisdiction constituted an effective waiver of the jurisdictional objection.[3]

---

[2]Under Oklahoma law, an out-of-state attorney may be admitted to practice for the purpose of a particular lawsuit if he associates an Oklahoma attorney who appears for him. (5 Okla. Stats. 1971, § 17.)

[3]This portion of the Oklahoma appellate court's opinion declares:

" . . . the decisive question here is whether appellant could waive such constitutional right and confer jurisdiction on the Oklahoma court over his person by voluntarily submitting thereto. We hold he can and did by filing an answer and proceeding through trial without once raising a challenge to the court's jurisdiction over his person.

"Why appellant did so is quite beyond the scope of our judicial concern. But certain it is he did it and having done so the consequence does not, as he suggests, 'offend traditional notions of fair play and substantial justice.' For all we know it might have been lack of pride in his past that discouraged him from forcing a trial elsewhere.

"We might mention that we disapprove of the trial court's failure to compel the Ohio lawyer, Terry, to comply with the requirements of 5 O.S.1971 § 17. This he could have done by rejecting his appearance in this case until he first associated himself with local

■ The full faith and credit clause of the United States Constitution (art. IV, § 1) bars a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister state where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues and where the decree is not susceptible to collateral attack in the courts of the state which rendered the decree. (*Sherrer* v. *Sherrer,* 334 U.S. 343, 351-352 [92 L.Ed. 1429, 1436-1437, 68 S.Ct. 1087, 1 A.L.R.2d 1355]; *Heuer* v. *Heuer,* 33 Cal.2d 268, 271 [201 P.2d 385].) There is a collateral rule which permits the defendant to show that the foreign judgment is in excess of jurisdiction or affected with fraud. The latter rule, however, is subject to the limitation that when the court of the first state has expressly litigated the question of jurisdiction, its determination is res judicata and is itself protected by the full faith and credit clause. (*Sanpietro* v. *Collins,* 250 Cal.App.2d 203, 208 [58 Cal.Rptr. 219]; *Lewis* v. *Linder,* 217 Cal.App.2d 150, 151-152 [31 Cal.Rptr. 563]; see also, *Crouch* v. *Crouch,* 28 Cal.2d 243, 249 [169 P.2d 897]; *In re Marriage of Leff,* 25 Cal.App.3d 630, 635-637 [102 Cal.Rptr. 195].)

The limitation on inquiry into the original court's jurisdiction was succinctly described in *Durfee* v. *Duke,* 375 U.S. 106, 111 [11 L.Ed.2d 186, 191, 84 S.Ct. 242]: "However, while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."

■ The divorce decree of the Oklahoma district court sets out an express finding of personal jurisdiction and the opinion of the Oklahoma Court of Appeals discloses that the question of personal jurisdiction was expressly litigated on appeal and decided against Dr. Fountaine. The California courts are bound to give full faith and credit to the Oklahoma court's finding of personal jurisdiction and thus are bound by the entire decree of the Oklahoma district court.

counsel and took the oath required of Oklahoma lawyers. The most that can be said of such failure, however, is that the irregularity did not impair the power of the court to hear and decide the dispute. The decree below is sustained by ample evidence. Appellant's failure to offer proof controverting that of appellee was fatal to his defense."

Real party in interest urges that he is entitled to relief from the Oklahoma judgment because it was procured by extrinsic mistake, i.e., by the incompetence of the Ohio lawyer who made a general appearance in the Oklahoma divorce suit, thus waiving Dr. Fountaine's jurisdictional defense. Generally, a foreign judgment may be impeached by evidence of extrinsic fraud, i.e., fraud which prevents litigation of the issues. (50 C.J.S., Judgments, § 894.) Although counsel for real party in interest cites California cases allowing relief from domestic judgments secured by extrinsic mistake, he cites no authority which permits escape from the demands of full faith and credit in circumstances such as this. The Ohio attorney's waiver of the jurisdictional defense, however ignorant, did not prevent full litigation of the central issues of marriage and paternity in Oklahoma. Thus there was no extrinsic mistake. Real party in interest has not demonstrated that the divorce decree is vulnerable to collateral attack in Oklahoma.

Although the full faith and credit issue is a sufficient basis for our decision, it is apparent that Dr. Fountaine is seeking to deny in California a claim he did not deny in Oklahoma, i.e., that the child was conceived while he was living with petitioner. He makes no claim that he contested the paternity issue in the Oklahoma litigation. To all appearances the only contested issue in Oklahoma was the existence of a common law marriage. As to the issue of paternity, Dr. Fountaine's verified, personally signed answer in the Oklahoma action alleged: "Defendant further denies that a child, Brian Keith, a minor, was born to the plaintiff as issue of an alleged marriage . . . ."

The foregoing answer denies that Brian Keith was born as the issue of a marriage but not that the answering defendant was the father of the child. Such a denial is a "negative pregnant," impliedly admitting the allegation of the complaint. (*California Corrugated C. Co.* v. *Stewart,* 215 Cal. 120, 123 [8 P.2d 1013].) Oklahoma law, like California law, gives scant regard to such devious denials. (*Jackson* v. *Green,* 13 Okla. 314 [74 P. 502].) It is regrettable that the devious pleading filed in Oklahoma was not brought to the attention of the California superior court, which had the responsibility of determining whether the paternity defense was frivolous. (Code Civ. Proc., § 1695, fn. 1, *ante.*)

Real party in interest urges that section 1695 (formerly numbered 1696) permits a nonfrivolous paternity defense without regard to the finding or decree of a foreign court. He cites *Smith* v. *Smith,* 125 Cal.App.2d 154, 166 [270 P.2d 613], for the proposition that the Uniform

Reciprocal Enforcement of Support Act imposes an independent responsibility on the local court to decide whether a duty of support exists. At this point real party in interest misconstrues the act, even to the point of bringing it into conflict with the full faith and credit clause. Section 1695 is *in pari materia* with section 1694, which deals specifically with the situation presented when the local court is confronted with a final support decree of a foreign court. In the latter event, section 1694 restricts the defendant only to defenses or modification available to a defendant in a proceeding to enforce a foreign support judgment. Construed in relationship to the latter section, section 1695 gives full deference to the demands of full faith and credit.

In view of the binding character of the Oklahoma decree, Code of Civil Procedure section 1694 (formerly § 1695) precluded the defense of nonpaternity. The Sacramento Superior Court exceeded its authority in ordering a blood test.

Let a writ of prohibition issue as prayed.

Puglia, P. J., and Paras, J., concurred.