[No. A018821. First Dist., Div. Five. Apr. 3, 1984.]

VORYS, SATER, SEYMOUR & PEASE, Plaintiff and Respondent, v. JEFFREY RYAN et al., Defendants and Appellants.

## COUNSEL

Gregory L. McCoy, Charles A. Koss and Thiessen, Gagen & McCoy for Plaintiff and Respondent.

Kathleen Courts and White, Courts & Mitchell for Defendants and Appellants.

## OPINION

**KING, J.**—In this case we hold that a California resident who intervenes in Ohio litigation and goes there for negotiations resolving the litigation has

sufficient minimum contacts with Ohio to enable its courts to exercise personal jurisdiction over him in an action by his Ohio attorney for attorneys' fees.

The law firm of Vorys, Sater, Seymour & Pease (Vorys) represented Jeffrey Ryan, Equinox Arabians, Geraldine Coelho, Maurice Ryan, and Lee Ryan (Ryans) in a dispute over an Arabian horse, Witroska. Vorys is located in Ohio; Ryans are California residents and a California partnership. Ryans signed a written agreement for the purchase of Witroska from Halsted Arabians, an Ohio business. Ryans delivered its check for $42,500 to Halsted in Ohio and were to receive Witroska later, in Kentucky. Neil Chur, a third party, filed suit against Halsted in Ohio, claiming he had purchased Witroska from Halsted before the agreement between Halsted and Ryans. Halsted had refused to deliver title or possession of Witroska to Chur.

Ryans' California attorney arranged for Vorys to intervene in the Ohio lawsuit, to protect Ryans' claim to Witroska. Ryans became dissatisfied with Vorys over the fee it charged Ryans for making an unsuccessful motion. Maurice and Jeffrey Ryan went to Ohio and negotiated a settlement of the lawsuit, but felt the settlement papers prepared by Vorys were defective. Ryans refused to pay Vorys' fees.

Vorys filed an action in Ohio for payment of its fees. Ryans failed to appear and the Ohio court rendered a default judgment for Vorys. Vorys subsequently obtained a "sister state judgment" in Contra Costa County Superior Court. Ryans moved to vacate this judgment contending the Ohio court lacked personal jurisdiction to render the original judgment. Ryans appeals from the trial court's denial of the motion to vacate. We affirm the judgment.

■ A defendant in an action to enforce a foreign judgment is permitted to show "that the foreign judgment is in excess of jurisdiction," except when the jurisdiction issue was expressly litigated in the foreign state. (*Craig* v. *Superior Court* (1975) 45 Cal.App.3d 675, 680 [119 Cal.Rptr. 692].) Vorys won a default judgment without the Ohio court ever hearing a challenge to its jurisdiction.

Ohio's long-arm statute allows service of process on a nonresident "who, acting directly or by an agent, has caused an event to occur out of which the claim which is the subject of the complaint arose, from the person's: (1) Transacting any business in this state. . . ." (Ohio Civil Rule 4.3(A) (amended eff. July 1, 1980).) California's long-arm statute contemplates a similar exercise of jurisdiction. (See the Judicial Council Comments to Code of Civil Procedure section 410.10.) Courts have interpreted subsection (1)

of the Ohio statute as extending personal jurisdiction to its constitutional limits. (*Welsh* v. *Gibbs* (6th Cir. 1980) 631 F.2d 436, 439; *In-Flight Devices Corp.* v. *Van Dusen Air, Inc.* (6th Cir. 1972) 466 F.2d 220, 225.) (2) The federal constitutional standard for a state to exercise personal jurisdiction over a party is that the party must have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*International Shoe Co.* v. *Washington* (1945) 326 U.S. 310; 316-317 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]; see *Atkinson* v. *Superior Court* (1957) 49 Cal.2d 338, 345-346 [316 P.2d 960].)

A three-part test has been used to determine when a defendant has "minimum contacts" with a forum state. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." (*Pickens* v. *Hess* (6th Cir. 1978) 573 F.2d 380, 385; see also *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 898-899 [80 Cal.Rptr. 113, 458 P.2d 57].)

██ Ryans clearly availed itself of the privilege of acting in Ohio. Its intervention in the lawsuit between Chur and Halsted Arabians was voluntary; it was not legally compelled to appear in Ohio. It hired an Ohio law firm to do legal work in Ohio. This work was done at Ryans' request and for its benefit. The participation of Ryans and Vorys in settlement negotiations in Ohio further supports the conclusion that the Ryan Group was transacting business there.

██ To justify personal jurisdiction, a plaintiff need not show multiple transactions by defendant within a forum state; a single transaction of business within the state may constitute sufficient contact. (See *Didactics Corporation* v. *Welch Scientific Company* (N.D. Ohio 1968) 291 F.Supp. 890, 894-895; *Henry R. Jahn & Son* v. *Superior Court* (1958) 49 Cal.2d 855, 861 [323 P.2d 437]; *Martin* v. *Detroit Lions, Inc.* (1973) 32 Cal.App.3d 472, 475 [108 Cal.Rptr. 23].) ██ Ryans' contract for legal services was sufficiently connected with Ohio so that Ohio's exercise of personal jurisdiction was reasonable. (*McGee* v. *International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199].)

No California case has considered whether retaining an attorney in another state gives that state personal jurisdiction in subsequent disputes over attorneys' fees. Most reported cases from other states uphold the exercise

of personal jurisdiction. (See *Mouzavires* v. *Baxter* (D.C. 1981) 434 A.2d 988; *Elman* v. *Belson* (1969) 32 App.Div.2d 422 [302 N.Y.S.2d 961]; *Mayer* v. *Goldhaber* (1969) 63 Misc.2d 605 [313 N.Y.S.2d 87]; *O'Brien* v. *Lanpar Co.* (Tex. 1966) 399 S.W.2d 340; *Toulouse* v. *Swanson* (1968) 73 Wn.2d 331 [438 P.2d 578]; but see *Winick* v. *Jackson* (1966) 49 Misc.2d 1009 [268 N.Y.S.2d 768].) We reach the same conclusion here.

Ryans also contend that Ohio's exercise of jurisdiction over this case is constitutionally unreasonable because Ohio does not provide for mandatory arbitration of attorneys' fees disputes as does California. (See Bus. & Prof. Code, § 6200 et seq.) Although California considers arbitration a superior method of resolving attorneys' fees disputes, its unavailability in Ohio does not "offend traditional notions of fair play and substantial justice." (*International Shoe Co., supra,* 326 U.S. at p. 316 [90 L.Ed. at p. 102].) Even if this action had been brought originally in California, arbitration of fee disputes is not applicable to attorneys from other states who maintain no office here and rendered no material services in California. (See Bus. & Prof. Code, § 6200, subd. (a)(1).)

We affirm the trial court's denial of the motion to vacate the entry of the sister state judgment.

Low, P. J., and Haning, J., concurred.