William O. CALVERT, et al., Plaintiffs,

v.

Pete HUCKINS, et al., Defendants.

Civ. No. S–94–0503 WBS JFM.

United States District Court,
E.D. California.

Jan. 13, 1995.

Donald M. Wanland, Jr., Brodovsky and Brodovsky, Sacramento, CA, for William and Elfreida Calvert.

Terence J. Keeley, Keeley and Keenan, Yuba City, CA, for Pete Huckins and Timbuctoo Sporting Estate.

Stanley A. Coolidge, Jr., Law Offices of Stanley A. Coolidge, Yuba City, CA, for Western Aggregates, Inc. and Silica Resource Inc.

Steven Paul Saxton, Downey Brand Seymour and Rohwer, Sacramento, CA, for Centex Corp. and Centex Cement Enterprises Inc.

John Michael O'Brien, Graham and James, Sacramento, CA, Diane L. Gibson, Graham and James, San Francisco, CA, for Cal Sierra Development Co. Inc.

Goss Elec., Linda, CA, pro se.

Robert D. Rose, Lorenz Alhadeff Lundin and Oggel, San Diego, CA, for Western Water Co. and YG Development Co., Inc.

Tom H. Bailey, Porter Scott Weiburg and Delehant, Sacramento, CA, Stanley A. Cool-

idge, Jr., Law Offices of Stanley A. Coolidge, Yuba City, CA, for Granite Const.

Daniel George Montgomery, Yuba County Counsel, Marysville, CA, for County of Yuba.

James W. Lemmond, California Dept. of Transp., Legal Div., Sacramento, CA, for State of Cal.

Yoshinori H.T. Himel, U.S. Atty., Sacramento, CA, for U.S.

## MEMORANDUM AND ORDER

SHUBB, District Judge.

The parties are again before the court on defendants', Centex Corporation ("Centex") and Centex Construction Products, Inc. ("CXP"), motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2).[1] A hearing on the motion was originally held on November 7, 1994. At that time the court granted plaintiffs additional time to conduct further discovery relating to jurisdiction over the defendants. The discovery having been conducted, and the parties given additional opportunity to brief and argue their positions, the court grants defendants' motion.

## BACKGROUND

Plaintiffs seek to quiet title to a roadway which provides access to their property in Yuba County, California. They also seek related damages. Defendant Western Aggregates, Inc. ("Western") is a Nevada Corporation licensed to conduct business in California. Wanland Second Supplemental Decl., Exhs. A. and D.; Hersch Decl. ¶ 2. Western extracts sand and gravel useful in the production of concrete from land near the plaintiffs' property. JOINT ANNUAL REPORT ON FORM 10–K FOR THE FISCAL YEAR ENDED MARCH 31, 1994: CENTEX CORPORATION AND SUBSIDIARIES at 5. ("Form 10–K"). Western has title and mineral rights to between 6800 and 10,000 acres of California land in the Yuba Goldfields. Dagnan Decl. ¶ 14. Apparently, Western believes that these rights extend to the roadway which is the subject of this action, since it has allegedly set up security gates and

---

1. Defendant CXP also moves to dismiss for failure of proper service under Fed.R.Civ.P. 12(b)(5). Because defendants' motion is granted under 12(b)(2), the court does not consider this issue.

employed security guards in order to restrict passage on the roadway. Compl. ¶ 7.

Movants Centex and CXP, are, respectively, the grandparent and parent companies of Western. Centex owns 49% of CXP and CXP owns 100% of Western. Both Centex and CXP are stockholding companies based in Dallas. Dagnan Decl. ¶ 2; Hersch Decl. ¶ 2. Centex is incorporated in Nevada, Hersch Decl. ¶ 2, while CXP is incorporated in Delaware. Dagnan Decl. ¶ 2. Neither firm is licensed to do business in California, neither firm maintains an office in California, and neither firm owns property in California. Dagnan Decl. ¶¶ 4, 6, 7; Hersch Decl. ¶¶ 3, 6, 7.

Centex, however, has appeared as a litigant before California courts. Specifically, plaintiffs produce documents showing that Centex has been sued in California courts five separate times. In one of these cases, a judgment was entered against Centex. Moreover, Centex purposely availed itself of the California judicial system in 1989 when it joined with fourteen other plaintiffs in bringing an action against some 30 defendants. Wanland Second Supplemental Decl., Exh. G.

Additionally, Centex and CXP maintain strong ties with Western. Throughout the years, officers and directors of CXP and Centex have maintained a substantial presence on Western's Board of Directors. Wanland Supplemental Decl., Exhs. A, B, C. On at least one occasion,[2] Centex guaranteed a note issued by Western. Wanland Second Supplemental Decl., Exh. A. Centex has also consolidated the financial statements of Western, along with its other subsidiaries, into its annual reports. Wanland Supplemental Decl., Exh. C. ¶ 94.

## STANDARD

■ Once the defendant challenges jurisdiction, the burden of proof to show that jurisdiction is appropriate lies with the plaintiff. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). Since defendants' motion is to be decided on pleadings, affidavits, and discovery materials, the plaintiff need only establish a prima facie case of personal jurisdiction in order for this action to proceed. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n. 3 (9th Cir.1993). In order to establish a prima facie case the plaintiff must produce documentary evidence containing facts sufficient to support a finding of personal jurisdiction. *Sher*, 911 F.2d at 1361.

■ Personal jurisdiction over a nonresident defendant requires two things. First, the defendant must be amenable to service of process under the applicable state long-arm statute, and second, the exercise of jurisdiction must satisfy the due process clause. *See Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir.1985). This court looks to California's long-arm statute. *See* Fed.R.Civ.P. 4(e)(1). Since the California long-arm statute extends to "the outer limits of due process ..." *Threlkeld v. Tucker*, 496 F.2d 1101, 1103 (9th Cir.1974), the two requirements for personal jurisdiction converge. As a result, "federal courts in California may exercise jurisdiction to the fullest extent permitted by due process." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.1986).

■ Under a due process analysis, a court may not assert jurisdiction over a nonresident defendant unless the defendant has enough "minimum contacts with the forum state" to ensure that suit in the forum does not offend traditional notions of " 'fair play and substantial justice.' " *Sher*, 911 F.2d at 1361, *quoting International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

## ANALYSIS

Plaintiffs make two arguments. First, they argue that CXP and Centex have enough contacts with California to warrant a finding of general jurisdiction.[3] Alternatively, they contend that Western's contacts with California should be attributed to Centex and CXP under the doctrine of alter ego jurisdic-

---

**2.** Plaintiffs also submit a second document purporting to show that Centex guaranteed a promissory note issued by Western. However, since the copy submitted to the court is neither dated nor signed it has little evidentiary value.

**3.** Plaintiffs do not argue for limited or special jurisdiction.

tion. These arguments are addressed in turn.

## A. General Jurisdiction Through Direct Contacts

■ Plaintiffs begin by arguing that Centex and CXP have enough direct contacts with California to justify the exercise of general jurisdiction. General jurisdiction is an exacting standard. It requires that the defendant's contacts with the forum state be both "substantial and continuous." *Pacific Atlantic Trading Co.*, 758 F.2d at 1327. General jurisdiction is appropriate where the defendant's contacts with the forum state are so systematic and so continuous as to make it consistent with traditional notions of fair play and substantial justice to subject the defendant to the jurisdiction of the forum, even where the cause of action is unrelated to the contacts. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 and n. 9, 104 S.Ct. 1868, 1872 and n. 9, 80 L.Ed.2d 404 (1984). Plaintiffs do not allege that any of the movants' direct contacts with California are related to this action.

■ In support of general jurisdiction over Centex and CXP plaintiffs offer the following:

> (1) Centex and CXP have purchased goods and services from persons, parties or entities within the State of California during the past five years; (2) a retired director of Centex and CXP has resided in California during the past five years; (3) Centex has submitted to the jurisdiction of one or more California courts during the past five years; (4) Centex has pursued a civil action in a California court; and (4) in house counsel for Centex has provided legal services for both CXP and Western.

Plaintiffs' Supplemental Points and Authorities at 3–4, and Plaintiffs' Second Supplemental Points and Authorities at 4. These points fail to establish the kinds of substantial and continuous contacts necessary to justify general jurisdiction.

4. It should be noted here that plaintiffs produce no evidence suggesting that Centex entered California to make these purchases, or that these purchases were part of any ongoing commercial relationships.

5. Furthermore, nothing about the case where Centex appeared as a plaintiff suggests that it

Plaintiffs' first point is that defendants have made purchases from Californians.[4] However, plaintiffs fail to allege that the purchases were either continuous or systematic. Nor do plaintiffs offer supporting authority. It is difficult to envision a situation where general jurisdiction might be properly grounded on purchases from a forum resident. The logic of plaintiffs' argument suggests that regular consumers of California oranges and avocados are subject to the general jurisdiction of California courts. General jurisdiction over nonresidents is not so easily established.

Plaintiffs' second point is similarly unpersuasive. The activities of a retired director are not necessarily attributable to his or her former companies, and plaintiffs offer no reason why they should be in this case. Plaintiffs' third point is that Centex has been named as a defendant in five actions brought in California courts. However, in each case the action was also brought against a Centex subsidiary. As this case demonstrates, it is common practice for plaintiffs to name a parent company when it brings an action against a subsidiary. This by itself shows no continuous and substantial contact with California.

Plaintiffs' fourth point is that Centex has appeared as plaintiff in an action brought in a California court. While this does demonstrate a kind of 'purposeful availment' *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985), similar to that necessary for the exercise of limited or specific jurisdiction, it does not establish general jurisdiction because it is neither continuous nor systematic. Rather it is but a single instance. While such an instance might satisfy due process for purposes of a lawsuit arising from the contacts, *see, for example, Vorys, Sater, Seymour & Pease v. Ryan*, 154 Cal.App.3d 91, 200 Cal.Rptr. 858 (1984), it is not enough for general jurisdiction. Nor have plaintiffs produced even a single case suggesting that it might be.[5]

should be subject to the general jurisdiction of California. While the complaint filed by Centex and fourteen other plaintiffs does indicate that Centex, through its subsidiaries, is a "nationwide builder of homes, including many built within the state of California," it does not suggest that Centex itself has engaged in any systematic or continuous contacts within California. Plaintiff's

**678**

Finally, plaintiffs note that Centex's in-house counsel has provided legal services to Western. While this point comes the closest to the type of ongoing contact needed for general jurisdiction, it is simply too insubstantial to warrant a finding of general jurisdiction over Centex, especially since plaintiffs admit that Centex's in-house attorneys are located in Texas. Further, of course, since it is Centex which provides Western with in-house counsel, this point has no bearing whatsoever on CXP's contacts with California.

## B. Alter Ego Jurisdiction

■ Alternatively, plaintiffs contend that CXP and Centex are the alter egos of Western. Western's presence within California, they argue, should be attributable to both CXP and Centex. However, it is well settled that the mere presence of a subsidiary in a forum state will not suffice to establish personal jurisdiction over a nonresident parent company. *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir.1985); *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977). Nevertheless, courts have, on rare occasion, shown a willingness to "pierce the corporate veil" and attribute a subsidiary's presence within the forum state to its parent company for jurisdictional purposes. *For example, American Intern. Airways Inc. v. Kitty Hawk Group, Inc.*, 834 F.Supp. 222 (E.D.Mich.1993).

■ Whether to pierce the corporate veil is a factual inquiry that should be done on a case-by-case basis. *Keffer v. H.K. Porter Co., Inc.*, 872 F.2d 60, 65 (4th Cir.1989). Two elements must be present in order to find that one corporation is the alter ego of another. First, the parent must control "the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Institute of Veterinary Pathology, Inc. v. California Health Laboratories, Inc.*, 116 Cal.App.3d 111, 119, 172 Cal.Rptr. 74 (1981). Second, because piercing the corporate veil is a remedy founded on principles of equity, there must be enough evidence to

support a finding that failure to look past the corporate entity would "sanction a fraud or promote injustice." *Marr v. Postal Union Life Ins. Co.*, 40 Cal.App.2d 673, 681, 105 P.2d 649 (1940); *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App.3d 1220, 1249, 1 Cal.Rptr.2d 301 (1991).

■ Underlying both of these factors is a general presumption in favor of respecting the corporate entity. Disregarding the corporate entity is recognized as an extreme remedy, and "[c]ourts will pierce the corporate veil only in exceptional circumstances." *National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.*, 785 F.Supp. 1186, 1192 (W.D.Pa.1992). Reflecting this reluctance, courts hold plaintiffs who invoke the alter ego theory of personal jurisdiction to a slightly higher burden: "There is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980); *accord Ryder Truck Rental, Inc. v. Acton Foodservices Corp.*, 554 F.Supp. 277, 279 (C.D.Cal.1983).

■ Plaintiffs have failed to meet their burden on both of the elements necessary to support alter ego jurisdiction. Plaintiffs have not produced enough evidence to create a prima facie case that either Centex or CXP exert a measure of control over Western sufficient to support a finding that Western is a mere instrumentality of its parent corporations. Plaintiffs offer essentially five points. First and second are that Centex and CXP have ownership interests in Western, and that the three companies have some interlocking directors and officers. Courts have repeatedly held that such factors do not justify piercing the corporate veil. *See, for example, United States v. Jon–T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir.1985); *Mathes v. National Utility Helicopters Ltd.*, 68 Cal.App.3d 182, 190, 137 Cal.Rptr. 104 (1977). Third, Centex has incorporated Western's figures into Centex's financial reports. However, consolidating the activities

---

Supplemental Exh. G. Nor have plaintiffs attempted to show that the contacts of these other

subsidiaries should be attributed to Centex for the purpose of establishing general jurisdiction.

of a subsidiary into the parent's annual reports is a common business practice. It is allowed by both the Internal Revenue Service and the Securities and Exchange Commission, and it is recommended by generally accepted accounting principles. *Lowell Staats Min. Co. v. Pioneer Uravan, Inc.,* 878 F.2d 1259, 1264 (10th Cir.1989); *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft,* 751 F.2d 117, 121 n. 3 (2d Cir.1984). Fourth, plaintiffs point to the fact that Centex has guaranteed at least one promissory note issued by Western. Again, this is common business practice and a normal feature of parent-subsidiary relationships. It does not demonstrate the measure of control necessary to invoke alter ego jurisdiction. *See Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177 (9th Cir.1980); *United States v. Bliss,* 108 F.R.D. 127, 132 (E.D.Mo.1985); *Akzona Inc. v. E.I. DuPont De Nemours & Co.,* 607 F.Supp. 227, 237 (D.Del.1984). Fifth, and finally, plaintiffs point out that counsel for Centex has provided legal services to both CXP and Western. Again, while this point carries plaintiffs' argument the furthest, it nevertheless does not suffice to establish the measure of control necessary to justify disregarding the corporate entity.

Indeed, the only thing clearly established by plaintiffs' evidence is that Western is the subsidiary of CXP and Centex. While the court might infer from this that CXP and Centex exercise some measure of control over Western, this is simply not enough. Plaintiffs must present evidence showing that CXP and Centex do more than exercise the broad oversight typically indicated by common ownership and common directorship. *See Rollins Burdick Hunter of So. Cal., Inc. v. Alexander and Alexander Services, Inc.,* 206 Cal.App.3d 1, 9, 253 Cal.Rptr. 338 (1988); *Williams v. Canon, Inc.,* 432 F.Supp. 376, 380 (C.D.Cal.1977) ("[J]urisdiction [is] dependent on more than mere control of the subsidiary by the parent corporation [since] control necessarily comes with ownership."). Rather, plaintiffs must show that CXP and Centex control and manage Western to such a degree that Western becomes the "mere

instrumentality" of its parent corporations. *Institute of Veterinary Pathology,* 116 Cal. App.3d at 119, 172 Cal.Rptr. 74. This requires some showing that the parent corporations not only dictate general policies, but that they also control "how the company will be operated on a day-to-day basis." *Seltzer Sister Bottling Co. Inc. v. Source Perrier, S.A.,* 19 U.S.P.Q.2d (BNA) 1898, 1991 WL 279273 (N.D.Cal.1991) *quoting Williams,* 432 F.Supp. at 380; *see also Kramer,* 628 F.2d at 1177 (finding no alter ego jurisdiction where parent neither controlled the internal affairs of subsidiary nor managed its day-to-day operations). Plaintiffs have not made such a showing. They produce no evidence suggesting that CXP or Centex are involved in the internal operations or day-to-day affairs of Western. Instead, they offer conclusory allegations and point to discovery which does no more than outline the kind of typical oversight that one might expect a parent to exercise over its subsidiary.

Even if plaintiffs had made a sufficient prima facie showing of control, defendants' motion would still be granted since plaintiffs have produced no evidence whatsoever going to the second requirement for piercing the corporate veil—that failure to do so would "sanction a fraud or promote injustice." *Marr v. Postal Union Life Ins. Co.,* 40 Cal. App.2d 673, 681, 105 P.2d 649 (1940); *Las Palmas Associates v. Las Palmas Center Associates,* 235 Cal.App.3d 1220, 1249, 1 Cal. Rptr.2d 301 (1991).[6] Plaintiffs make no allegations of fraud or similar misdeeds. There is not even a suggestion that Western is undercapitalized, *see Wells Fargo & Co. v. Wells Fargo Exp. Co.,* 556 F.2d 406, 425 (9th Cir.1977), or that efforts have been made by Centex or CXP to strip Western of assets in order to avoid liability. *Compare Las Palmas,* 235 Cal.App.3d at 1251, 1 Cal.Rptr.2d 301. In fact, plaintiffs' own evidence shows that Western holds title to thousands of acres of California land, as well as owning expensive machinery. *See* Plaintiffs' Second Supplemental Points and Authorities at 2–3. Indeed, the court fails to see how dismissal of Centex and CXP will have any bearing whatsoever on plaintiffs' suit, or should they pre-

---

**6.** The court notes that plaintiffs cited both of these cases as stating the appropriate standard for piercing the corporate veil.

vail, on their likely recovery.[7] Under these circumstances, plaintiffs have failed to make any showing at all that refusal to pierce the corporate veil will result in any injustice or unfairness.

IT IS THEREFORE ORDERED that defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) be, and the same is hereby, GRANTED.

---

**7.** At oral argument counsel for plaintiffs offered two reasons for wanting to keep Centex and CXP in the suit. First, plaintiffs wish to keep the parent corporations in the suit because this is a quiet title action and they want to be sure that all possible claims to the land remain before the court. However, defendants maintain, and plaintiffs do not dispute, that defendants own no property in California. Hirsch Decl. ¶ 7, Dagnan Decl. ¶ 8. Plaintiffs' second stated reason, that they wish to keep the out-of-state corporations in the suit so as to increase any possible punitive damages award, while the more credible of the two, is hardly the kind of equitable justification necessary in order to disregard the corporate entity, especially since there is no suggestion in the record that Centex or CXP have engaged in any conduct which might warrant an award of punitive damages. *Compare Marr*, 40 Cal.App.2d 673, 105 P.2d 649 (piercing corporate veil justified where assets were transferred out of subsidiary corporation thereby leaving holder of promissory note without recourse); *Las Palmas*, 235 Cal.App.3d at 1251, 1 Cal.Rptr.2d 301 (corporate entity disregarded where subsidiary corporation was formed "for the purpose of committing a continuing fraud against buyers").