[No. B031686. Second Dist., Div. Seven. Nov. 22, 1988.]

ROLLINS BURDICK HUNTER OF SOUTHERN CALIFORNIA, INC., et al., Plaintiffs and Appellants, v. ALEXANDER & ALEXANDER SERVICES, INC., et al., Defendants and Respondents.

**4**

COUNSEL

Buchalter, Nemer, Fields & Younger, Jack I. Samet and Stephen K. Lubega for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Charles C. Ivie, Dean J. Kitchens and Helen L. Duncan for Defendants and Respondents.

OPINION

LILLIE, P. J.—Plaintiffs appeal from an order granting the motion of defendants Alexander & Alexander Services, Inc. (A & A Services) and John Bogardus to quash service of summons for lack of jurisdiction.[1]

FACTS

Plaintiffs, Rollins Burdick Hunter of Southern California (RBH Southern California) and Rollins Burdick Hunter Co.,[2] sued a number of defendants for breach of agreement authorized by statute, interference with contractual relations, unfair competition, breach of fiduciary duty and fraudulent conversion. All causes of action included the following allegations: Plaintiff RBH Southern California conducts business as a commercial insurance

---

[1] The order is appealable. (Code Civ. Proc., § 904.1, subd. (c).)
[2] Plaintiff RBH Southern California, a California corporation, is a subsidiary of plaintiff Rollins Burdick Hunter Co., a Delaware corporation.

broker in California. Defendant A & A Services, a Maryland corporation, is the sole shareholder of defendant Alexander & Alexander, Inc. (A & A Inc.), a Maryland corporation, which, in turn, is the sole shareholder of defendant Alexander & Alexander of California, Inc. (A & A California), a California corporation. A & A California carries on a business in California similar to that of plaintiff RBH Southern California. Defendant John Bogardus, a resident of New York, is the chairman of the board of directors and chief executive officer of A & A Services. In 1976 plaintiffs entered into a contract with defendant Donald Huff whereby Huff agreed to sell his insurance business, including its goodwill, to plaintiffs. In connection with this contract Huff agreed that within specified areas of California he would not carry on a business similar to the business sold so long as plaintiffs carried on a like business in those areas. Following execution of the purchase and sale contract and Huff's covenant not to compete, Huff commenced employment with plaintiff RBH Southern California and became its president and a member of its board of directors. In 1984, unknown to plaintiffs, defendants A & A Services, A & A Inc. and A & A California (A & A defendants) agreed to aid Huff in breaching his covenant not to compete with plaintiffs. Pursuant to such agreement, in February 1985 Huff terminated his employment with plaintiffs, became an employee of defendant A & A California, and diverted from plaintiffs for the benefit of the A & A defendants certain of the insurance contracts which he had sold to plaintiffs. Defendant John Bogardus had actual or constructive notice of Huff's wrongdoing, including breach of covenant not to compete, but did nothing to put an end to such wrongdoing.

A & A Services and John Bogardus, together with other defendants, moved to quash service of summons upon them on the ground the court lacked personal jurisdiction over them. The motion was granted and plaintiffs thereafter filed an amended complaint which did not name as defendants A & A Services, Bogardus and the other defendants who had successfully moved to quash service. After the amended complaint was filed plaintiffs conducted discovery whereby they sought to elicit facts showing that A & A Services and Bogardus were subject to the jurisdiction of the court. Based on information obtained through discovery plaintiffs, by leave of court, filed a second amended complaint which renamed A & A Services and Bogardus as defendants.

A & A Services and Bogardus again moved to quash service of summons upon them. The declaration of Bogardus in support of the motion stated: He is chairman of the board and chief executive officer of A & A Services but holds no position with, and is not employed by, either defendant A & A Inc. or defendant A & A California. Bogardus is a resident of Connecticut

and his office is located in New York; he does not maintain any residence or office in California. Except for a small interest in a limited partnership which owns real property in California, Bogardus owns no interest in real or personal property in California and does not maintain a bank account there. He does not travel regularly to California on either personal or business matters; over the last 10 years he has been in California less than twice a year on the average. Defendant A & A Services is not actively engaged in the insurance brokerage business. It is a holding company which transacts business through stock holdings in subsidiary companies some of which are actively engaged in the insurance brokerage business. A & A Services is basically in the business of providing corporate management, tax and business planning, executive guidance, administrative support and internal auditing for the various subsidiary corporations in which it has stock interests. Shortly after April 5, 1985, Bogardus received a letter from John Pratt, chairman of the board of plaintiffs. That letter set forth Mr. Pratt's view of the employment of Donald Huff by A & A California and the alleged breach of Huff's noncompetition agreement with plaintiffs. Before he received Pratt's letter Bogardus never had heard of Huff nor had he ever seen Huff's covenant not to compete with plaintiffs. Prior to the time Huff was employed by A & A California Bogardus did not participate in any meeting involving the alleged breach of a covenant not to compete by any employee or former employee of plaintiffs later hired by defendant A & A California. In that same time frame Bogardus did not hear or suspect that any affiliate of A & A Services was contemplating employing, or actually had employed, any person who had a noncompetition agreement with plaintiffs. Bogardus first met Huff during the course of a business trip to California in August 1985. At that time Bogardus was aware of the present lawsuit (filed Apr. 1985) and had a brief discussion with Huff about it.

In support of the second motion to quash, defendant A & A Services submitted the declaration of its assistant secretary who also is an officer of A & A Inc. The declaration stated: A & A Services is incorporated in Maryland and its headquarters are located in New York. It is solely a holding company and transacts no business except through stock holdings in subsidiary companies. A & A Services has no offices or assets in California and none of its officers or directors is a resident or domiciliary of California. It is not qualified to do business in California and does not have an agent for service of process in that state. A & A Services and A & A Inc. are separate and distinct entities. Both corporations conduct separate meetings of their respective boards of directors and each has separate manage-

ment. A & A California is a wholly owned subsidiary of A & A Inc. which, in turn, is a wholly owned subsidiary of A & A Services.[3]

In opposition to the motion to quash plaintiffs submitted excerpts from depositions and defendants' answers to requests for admissions.[4]

The second motion of defendants A & A Services and Bogardus to quash service of summons was granted. This appeal followed.

## DISCUSSION

Under Code of Civil Procedure section 410.10, a California court may exercise jurisdiction over nonresident defendants on any basis not inconsistent with the United States or California Constitutions. ■ This statute manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].) ■ As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident defendant as long as the defendant has such minimum contacts with the forum that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057].) ■ Where a nonresident's activities in the forum state are extensive or wide ranging, or substantial, continuous and systematic, there is a constitutionally sufficient relationship to warrant jurisdiction for all causes of action asserted against him, whether or not they are related to those activities. (*Perkins* v. *Benguet Mining Co.* (1952) 342 U.S. 437, 447-448 [96 L.Ed. 485, 493-494, 72 S.Ct. 413]; *Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 669 [190 Cal.Rptr. 175, 660 P.2d 399].) Where, however, a nonresident defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. "In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147-148 [127 Cal.Rptr. 352, 545 P.2d 264].)

---

[3] After the present action was commenced a holding company named Alexander & Alexander U.S. Inc. (A & A U.S.) was formed. A & A Services owns a majority interest in A & A U.S. which owns all of the stock of A & A Inc. which, in turn, owns all of the stock of A & A California. For purposes of this appeal we ignore A & A U.S.

[4] Those portions of the discovery material upon which plaintiffs rely in this appeal will be discussed subsequently.

*John Bogardus*

Defendant Bogardus, chief executive officer and chairman of the board of A & A Services, is a resident of Connecticut and his office is in New York. He holds no position with A & A California. He does not maintain a residence or office in California. He owns no real property in California and does not maintain a bank account there. While he attended meetings of A & A California and personally solicited business for that corporation, he does not regularly travel to California on either business or personal matters; over a period of 10 years he has been in California less than twice a year on the average. In *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, the defendant, an interstate trucker, had made 20 trips a year into California over a period of 7 years to deliver and obtain goods, had an independent contractor relationship with a local broker, and was licensed to haul freight by the California Public Utilities Commission. The court failed to find in these facts a basis for general judicial jurisdiction in California. Inasmuch as general jurisdiction did not exist in *Cornelison,* clearly California does not have general jurisdiction over Bogardus as a result of his contacts with that state.

 Plaintiffs argue that the following circumstances, disclosed in their deposition of Bogardus, show that Bogardus was "personally involved" in the conduct of A & A California upon which this action is based: If a controversy arose regarding A & A California's hiring of an employee, Bogardus would have the final authority in resolving the dispute. On April 5, 1985, plaintiffs wrote to Bogardus and other high-ranking A & A executives requesting that they rectify the continuing unfair business practices caused by the conduct of Huff and A & A. Bogardus testified that the matter "was referred to our general counsel and all things being equal, I would go along with the recommendation of the general counsel and in this particular case that is what I did."

Bogardus's authority to settle disputes regarding A & A California's hiring practices is not relevant to the causes of action alleged. Regardless of such authority the fact remains, as shown by Bogardus's declaration, that he had nothing to do with A & A California's hiring of Huff and did not learn of Huff's covenant not to compete with plaintiffs until after he was hired by A & A California. Bogardus's reaction to plaintiffs' letter of April 5, 1985, likewise does not constitute activity on his part connected with the causes of action alleged. Bogardus's deposition testimony shows merely that after A & A California hired Huff, Bogardus followed the advice of counsel as to the Huff matter. The record does not disclose what that advice was or what action Bogardus took. " 'A state has power to exercise judicial

jurisdiction over an individual who causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable. [Citations.] When jurisdiction over an individual is based solely upon such act or omission, only a claim for relief arising from such act or omission may be asserted against the individual. [Citation.]'" (*Sibley* v. *Superior Court, supra,* 16 Cal.3d 442, 446, italics omitted.) ██ The gravamen of the complaint in this action is defendants' alleged participation in A & A California's hiring of Huff and the consequent breach of his covenant not compete with plaintiffs. Whatever the action Bogardus caused to be taken with regard to Huff, it took place after Huff was hired. Accordingly, Bogardus's conduct does not authorize California's assumption of jurisdiction over Bogardus based on his acts or omissions outside the state which affect the causes of action sued upon.

*A & A Services*

A & A Services is a Maryland corporation with headquarters in New York. It has no offices or assets in California, is not qualified to do business in California, and has no agent there for service of process. The only connection of A & A Services to California is that it is the grandparent corporation of A & A California, a California corporation which admittedly is subject to the jurisdiction of that state.

██ While jurisdiction over a wholly owned subsidiary does not alone give a court jurisdiction over the parent corporation (*Northern National Gas Co.* v. *Superior Court* (1976) 64 Cal.App.3d 983, 991 [134 Cal.Rptr. 850]; *Watson's Quality Turkey Products, Inc.* v. *Superior Court* (1974) 37 Cal.App.3d 360, 364 [112 Cal.Rptr. 345]), "[j]udicial jurisdiction over a subsidiary corporation will . . . give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence." (Judicial Council Com. to Code Civ. Proc., § 410.10, quoting Rest. 2d Conf. of Laws, § 52, com. b.) Ownership of all the stock of the subsidiary and the existence of common directors does not in itself provide the requisite domination and control over the subsidiary by the parent for purposes of jurisdiction. (*Mathes* v. *National Utility Helicopters Ltd.* (1977) 68 Cal.App.3d 182, 190 [137 Cal.Rptr. 104]; *Northern Natural Gas Co.* v. *Superior Court, supra,* 64 Cal.App.3d 983, 991.) "The basic test is whether one corporation is the alter ego of the other. [Citations.] In other words, what is required is something 'more than that amount of control of one corporation over another which mere common ownership and directorship would indicate.'

[Citation.]" (*Mathes* v. *National Utility Helicopters Ltd., supra,* 68 Cal.App.3d at p. 190.)

Illustrative of these principles is *Frazier, III* v. *Alabama Motor Club, Inc.* (5th Cir. 1965) 349 F.2d 456. In that case, each of the corporate defendants was incorporated in a state other than Georgia, the forum state. The majority of stock of each defendant was owned by National Enterprises, Inc., a Georgia corporation with its principal and only place of business in that state. The chief executive officer of National served in the same capacity for each of the defendants. For and on behalf of each defendant, the officers and employees of National performed such functions as: establish and enforce business policy; supervise and direct sales activities and public relations; formulate uniform business procedures; execute all contracts; and keep and maintain books of account and other records. While each of the defendants maintained an office in the state of its incorporation, the offices were operated under standard procedures developed by National's chief executive officer; the local managers were vested with limited authority and discharged none of the functions customarily assigned to corporate officers. In reversing an order of dismissal made on the ground defendants were not subject to suit in Georgia, the court stated: "[I]t is apparent that the corporate and business activities of each of the defendants . . . are centered in the offices of National in Atlanta. These business activities are managed, directed and completely controlled by National under the administration of its officers. The defendants are not separate corporate entities but integrated subsidiaries of National. The appearance of corporate autonomy is clearly superficial." (*Frazier, III, supra,* 349 F.2d at p. 460.)

In *Mathes* v. *National Utility Helicopters Ltd., supra,* 68 Cal.App.3d 182, the plaintiff sued various corporations based on a helicopter crash in Indonesia. The defendants included National Utility Helicopters Ltd. (NUH), an Indonesian corporation, and its parent Utility Helicopters, Inc. (Utility), a California corporation; Utility, in turn, was a wholly owned subsidiary of defendant Cordon International Corporation (Cordon), a Delaware corporation with headquarters in California. Officers and employees of Cordon exercised direct control over NUH's annual sales plan and budget; two members of NUH's board of directors were officers and directors of Cordon and Utility and they frequently changed NUH's general manager when NUH's accounting data were not satisfactory; the salary checks for NUH employees were drawn in Cordon's offices in California. The court agreed with plaintiff's contention that California's jurisdiction over Utility and Cordon extended to NUH because Utility and Cordon dominated and controlled NUH. (68 Cal.App.3d at p. 189.) Said the court: "We think the record contains uncontradicted evidence which compels the conclusion that

Cordon and Utility exercised such control over NUH as to justify treating NUH as a 'completely integrated subsidiar[y]' for purposes of jurisdiction. [Citations.]" (*Id.,* at p. 190, fn. omitted.)

While both *Frazier, III* and *Mathes* concerned the reverse of the situation in the case at bench in that there forum-based parent corporations controlled foreign subsidiaries, the principles enunciated in those cases apply in the present case wherein California has jurisdiction over a local subsidiary and the foreign parent contests jurisdiction.

Plaintiffs submitted the following evidence in opposition to the motion to quash: A & A Services approved A & A California's major budgets, including hiring and compensation, real estate purchases or leases, and purchases and sales of insurance businesses. A & A Services provided A & A California with guidelines whereby the latter was to invest nonfiduciary funds. A & A Services selected A & A California's public accountants and controlled all routine and spot audits of A & A California. Employees of A & A California were paid from outside California under a system set up by A & A Services and those employees were treated by A & A Services as its own employees. A & A Services also determined the compensation of all A & A California executives. A & A California's board of directors was made up entirely of employees of A & A Services or A & A Inc. A & A California never had a meeting of its board of directors and those directors received no compensation for their services. The chairman of the board of A & A Services came to California at least once a year where he met with employees of A & A California. During these visits the chairman, in order to further the business of A & A California, met with senior executives of major corporations which placed at least some of their insurance business with A & A California. He also met with senior executives of major corporations which did not do business with A & A California in order to solicit insurance business for A & A California.

The domination and control exercised by A & A Services over A & A California is at least as complete and pervasive as that exercised in *Frazier, III* and *Mathes*. It truly may be said that A & A Services is a separate corporate entity only in name and form. Every facet of its business—from broad policy decisions to routine matters of day-to-day operation—appears to have been dictated by A & A Services. Under these circumstances, a valid basis exists for California's exercise of personal jurisdiction over A & A Services.

## DISPOSITION

The order granting motion to quash service of summons is affirmed as to defendant Bogardus and reversed as to defendant A & A Services. Bogardus

shall recover his costs on appeal from plaintiffs. Plaintiffs shall recover their costs on appeal from A & A Services. A & A Services shall bear its own costs on appeal.

Johnson, J., and Kolts, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.